v. Stephens. I just want to make sure that the court room is settled. Okay, Ms. Haughton. Your Honors, may it please the court, Deborah Haughton and I represent the appellants and plaintiffs below, Chase and Marjorie Peden, who are here in the second row with me this morning. And we're on appeal from a number of orders of the district court, but obviously the most the grand of summary judgment. I'm sorry. To the county defendants, Glenn Stephens, Luce Elise, and Butch Conway. Well, if you've been sitting here this morning, you might notice that we care about whether Rule 54B has been satisfied for jurisdictional purposes. Yes, Your Honor. And we have that feature in this case as well, do we not? And you might want to talk about that, because some of us might have concerns about that. And I am happy to, Your Honor. I will point out, as I said in our briefing, that we were not given proper opportunity to respond to the motion for entry of final judgment at the lower court. So that's one of the procedural issues that I found problematic, that I think this court may find problematic as well. Did you not want judgment? I'm sorry? Do you not want judgment? We would like to keep our case together. There is still a case pending at the district court. And so there's two problems with Appley's argument. They have just boldly, or I should say baldly, alleged that there is injustice and hardship if their appeal isn't allowed to proceed. I will say this. Unlike, in my view, the order from our last appeal, here there is an order, it appears to be flatly adopted from a proposed order that was given to the district judge. But that said, the district judge did lay out reasons for why that there was an unjust lay here. That's actually not my issue. Let me tell you what my issue is. I'm only speaking for myself. The response to summary judgment dropped, purported to drop counts, right? It dropped, I think it's counts three and four, the conspiracy counts, the 1985 counts, right? Correct. That, as we have said, is not a proper mechanism in which to drop counts. Rule 41, which is the only thing it could be, allows you to drop an action, but not a count. The only way to go about dropping a count, really, I mean, I'm open to any suggestions, is to amend your complaint and to say these are withdrawn or dropped or no longer the operative, part of the operative complaint. And if they're improperly dropped, then those counts are still out there. And we can't say that there is a final judgment as to certain defendants because those counts are still live. That, I think, that to me is the issue. So if you could speak to that or talk about that, that's, and I'm speaking to the other side too. I want them to address it also. Sure. I'm happy to, Your Honor. Thank you. So we had filed, and that's an issue with this case, we had filed a previous motion to amend. It was denied as untimely. And so, therefore, I didn't file another motion to amend after that, when the first one was already denied as untimely earlier in the case. So, you know, I believed that it would be futile to do so. And you know, secondly, the district court, I believe, did not look at the interconnectedness of the claims properly. You know, I believe that there are claims that are still running with the case below with Carol Stevens that are interrelated and interconnected to these claims as well. And so that's why we would like to, you know, obviously for judicial efficiency and just, you know, efficiency of our case and the proper presentation of our case below, we would love to see those continue on with the case below. So, you know, while there were findings, well, statements that there was injustice and hardship, you know, the court really didn't find that. But the district court said that the factual basis for the claims were different for each defendant, the factual basis. But that doesn't seem, and part of it's no just reason for delay determination. I worry if that's an abuse of discretion because the district court entered a summary judgment in favor of Glenn Stevens, Conway, and Solis on counts five, defamation, count six, emotional distress, in part because it concluded there was no evidence the men were the source of the leak to the media. But as I understand it, you are now asserting that the leak, the identity of the leaker is the primary focus of the defamation claim. And that, in fact, is not a settled issue. It is not, Your Honor, but I will say that possibly in the briefing that that was the wrong way to phrase that because I do believe that we've got other issues with the defamation claim here. The defamation claim begins. I will say that. I've read your complaint, the operative one, and I don't read the complaint as the tip being the basis of the defamation. But assuming that it is, that does, is very different than the claim against Mrs. Stevens. Mrs. Stevens' claim is, you wrote the letter, you've told everybody these horrible things. That's the defamation as to her. I get why that claim still exists. I get why y'all are going to trial on that. But that's very different from they tipped off the media on what was in the file. I mean, those are just factually different. You would try those differently. You wouldn't even want them at the same table. Yes, Your Honor, but the problem is that the defamation actually really starts, if you will, when the Michael letter, which is knowingly false, is put into his personnel file and left there. Well, no, the defamation starts when it's written and sent. True, true. I mean, the second it reaches the destination, it's been published, right? Correct. But as to these other defendants, it starts with Carol Stevens there. But it starts with these other defendants when they accept that letter, recognize during the course of the investigation that it is false, and still put it into the record. And then further expound upon that by- I guess, though, I think the point is, or the question really is, those still seem to be very separate facts from what Mrs. Stevens is facing, correct? I'm not sure I would completely agree with that, you know, because I believe that this is all, you can't separate one part out of this and, you know, take it away. Obviously, if the tip is important and the tipster is Carol Stevens, you know, that's one thing. If the tipster is one of our other defendants and we don't know that yet, then, you know, obviously that's going to be interconnected as well. But I'd still argue that defamation starts to occur as to these other, as to the county defendants, Your Honors, when that false information is accepted, when they know it's false, and it's put into the personnel file. Your Honors, I do want to just, well, first of all, let me start by saying that Chase did not become inconduct and a couple of other things that his termination was based on by a so-called anonymous source who turned out to be Carol Stevens, whose identity was shielded from public view through a cover-up by the actions of her husband and the other county defendants here. This quite literally ruined his life. It destroyed his future employment opportunities. Mr. Peden has not been able to find comparable employment since this happened. And it's going to continue to hound him. We've seen that even in the pendency of this case where people have been told to Google him and they Google him and they find this damaging WSV report and next day he loses his job again. So he has not been able to keep employment. And this case really fundamentally asks this Court to consider whether procedural due process has meaning or whether it's just a skeleton, no flesh and bones. We don't bother to put anything on it. We don't worry about truth. We don't worry about due process. We just worry that, you know, notice and opportunity to be heard have been given and it doesn't matter if that notice is truthful or if, more importantly, here, which I think separates my case from every other. I want to ask you about that. So I know a big part of your argument, at least here, is that there was no meaningful pre-termination hearing, there was no meaningful name-clearing opportunity because I didn't know the basis of my termination, right? Correct. That's what I understand the argument to be. If you look at the notice, though, I won't read it out loud, but the notice seems to track many of the things that were in the Michael letter and has under the very broad umbrella of conduct unbecoming, which a lot can fit under there, and says at the end that your actions after describing all of this in the polygraph, your actions in keeping with the standards and conduct, your actions are not in keeping with the standards and conduct of the Sheriff's Office and therefore there's this decision, but before we make the decision we're going to have the hearing. That seems to cover very broadly, maybe not explicitly, but very broadly of what the reason for the termination was included the allegations in the Michael letter, right? Well, let me walk through those reasons for termination. So one was the prompt performance of duty. In the investigative report, they interviewed about 18 of this man's colleagues. None of them said he had any problem with prompt performance of duty, so that wasn't upheld by the investigation itself. They had no factual basis for that. Well, that's not what we're talking about, though. I mean, what you've said is, I didn't know the reason they, whether the reason's right or not is separate. I didn't know the real reason they terminated me. You're saying that Conway and Solis really terminated because of the affair. Correct. I should say the alleged affair. That's the reason for the termination, and you're saying that that's not what was told to him, but it seems that that was told to him in the notice, and I'm looking at page 108-1, I'm sorry, documentary 108-1, page 155 of the record. Well, Your Honor, the Michael letter was presented to him, but it was presented. I'm not even talking about the Michael letter. This is the notice of termination. This is the Gwinnett County notice of termination. It says, on December 28, 2017, the department initiated an initial investigation after receiving a letter in the mail making allegations that you, and I won't repeat them, but it seems to track what was in the Michael letter. Then it says, you admitted using your patrol car for personal business. We administered a polygraph. Two specific questions were asked. I won't repeat the questions, and there were signs of deception, and then your actions are not in keeping. That seems to incorporate the affair, the alleged affair, right? Your Honor, I don't believe it does, because when they're presented, when he's presented with those reasons, he doesn't understand that anyone knows about this affair. He does not understand that Conway and Solis know about this affair at that point, so he Well, that may be true or not, but the question again is, did the notice, did this letter put him on notice of the real reason for his termination? The letter says, you know, among the allegations, that you used your time on the clock, patrol car, and county uniform, and your cell phone to meet women and then to, you know, have an affair. That seems pretty clear that it's notice of exactly the reason that the police chief and that he was fired, is it not? No, Your Honor, not when Carol Stevens is not mentioned anywhere in that investigative report. Well, beyond that, why shouldn't we say, well, whatever steam your client might have had, doesn't that go away when your client is given the opportunity to resign, and he chooses to resign? If there was a problem, why doesn't that cure it, as the district judge seemingly found? Your Honor, if the notice doesn't provide that he's being fired because of this affair, and again, they don't know, he doesn't know that they know that there is an affair that has happened, and by the way, it was over at that point, and it was not alleged, I think everyone's agreed that it did occur, but when he is terminated on the basis of that affair, and both of these men said full stop in their deposition testimony that this was the sole reason he was fired, not because of these other three reasons at all, then he, does he call Carol Stevens as a witness? Does he even know to? I would say he does not, and I think that's part of this procedural problem here, Your Honor, and I see my time is up, so I will sit down for the time being. You were answering questions, that's fine. Ms. Couch. May it please the Court, my name is Angela Couch, I represent the Appalese Conway, Solis, and Glenn Stevens. I want to touch on the jurisdictional issue first. There was this voluntary withdrawal of the 1985 claims in the face of the summary judgment. So you want us, as I understand it, to construe that as an amendment or a motion to amend? Yes, sir. And then to construe the district court's order as having allowed an amendment, essentially retroactively or nunk-pro-dunk allowed an amendment, and then dismissed what was remaining, right? Well, Rule 15 doesn't require a written motion. All it requires is either written consent of the opposing party or leave of court. I will say that I spent probably an irrational amount of time yesterday trying to run down a case where we have actually done that, and I can't find one. We've intimated that it could be done, Clay is, I think, the best one, right, and I know you, that was cited somewhere in the papers, that that might be a way to do it, but we've never actually done it, and that's a bit of a problem for me, because I'm not sure that this is even as good of the facts were in Clay to want to do that. Well, I think with the actual concession, if you read the concession in the face of the summary judgment, it's obvious that it's not a cognizable claim. And so I think what that gets us to...  Mid-City Management, it's 643 F. 2nd 386. You might want to look at page 388, note 2. This is a Fifth Circuit Unit A case from 1981 that said, although the defendant's counterclaim rendered the action a multi-claim action under Rule 54, neither that rule nor Section 1291 bars review since the defendant actually abandoned its counterclaim at trial in response to questioning by the trial judge. It seems that if there's an on-the-record abandonment, that earlier precedent allows that to be effective for purposes of Rule 54. Yes, sir. And so to answer the jurisdictional question, I do think that it is, in fact, a final judgment in that regard because with that withdrawal and then the summary judgment order then disposed of all of the claims against these appellees that were cognizable. Counts 3 and 4 were never cognizable. How was the abandonment affected here? The abandonment of those claims? It was in the face of the summary judgment, and then it was acknowledged in the order, and then it was acknowledged again in the judgment. And we would argue, even as an alternative, that if you don't find that it's a Rule 15 or a proper way, because Counts 3 and 4 were not cognizable claims for a violation of 1985, what the case law says is that there has to be a dismissal of the cognizable claims. And so I think you could, in the alternative, argue that. Moving on to the no just reason for delay, the two claims that remain in the district court are state law claims. They're not federal claims. And so I think it's important to note that first. Second, the argument that the defamation claims are intertwined is based on this tip theory. Well, plaintiffs can't raise a new claim in the face of a summary judgment. When you read the operative complaint in this case, the defamation is not about the tip. It's about the release of the personnel file. Yeah, but there is an allegation at page 42 and 43 of the operative complaint that connects it all together as part of the conspiracy to sort of republish and spread this thing, right? Well, I think that when you read the complaint, when you actually look at the defamation claim itself and the connection to these defendants, the county defendants, it's a separate claim against Carol Stevens. The defamation of Carol Stevens is the publishing of the Michael letter, right? And that is something that is completely separate from the idea of the release or the inclusion of that letter in the personnel file. Now, this morning, Ms. I mean, the way to look at this is if you're going to try this thing together, there are overlapping facts that a court will have to deal with. And here, as I understand the allegations, Mrs. Stevens sent this letter, that's her defamation, and then the county defendants took that letter and published it widely both inside the department and then outside the department. That's all part of one story of the defamation. It certainly goes to the damages if they're collective actors. Well, and that may be the case, but given that the requirement under defamation law, these defendants have separate legal duties to put that letter in the file. They have a separate duty under the Open Records Act to release the file. That goes to the success of the claim. You may be right on the merits of the claim, and I suspect you are right in a lot of it. But that's separate and apart from the question that we're trying to answer, which is, are these things completely factually separate such that it's unjust to delay your appeal, and if the allegations are overlapping, regardless of whether they're successful or not? Sure. I understand the point. So I think there's a distinction between a factual overlapping and a legal overlapping. And we contend that, in fact, the facts are separated when you read the complaint. They've tried to engraft a new claim about this tip. There's an order quashing the Thomas subpoena. Yes, sir. Which is an order challenged in this appeal. Yes, sir. And that they say has prevented them from determining whether the leak came from Mrs. Stevens, right? Yes, sir. And so if that's true, then it's not clear that there's no evidence that the men were the source of the leak, is it? Well, in depositions, Ms. Halton asked each of these appellees precisely the question, did you have communication with Tony Thomas about Mr. Peden? And they all answered no. So the idea that she can't get the information about these defendants any other way is untrue. She asked them and they said under oath, no, we didn't do it. That doesn't mean that the response to the subpoena might not show something different. Right, but the allegation is there's no other way for her to know. That's not true. My concern is whether there's still a lingering issue that, I mean, the district court said, look, there's no evidence the men that were the source of the leak to the media. The problem with that is we don't know whether the subpoena should have been quashed and had the subpoena not been quashed, whether it would have revealed some different evidence that would then supply evidence that one of the men were the source of the leak. I think Intervenors Council will speak to the subpoena issue. This goes to the jurisdictional problem? Yes, sir. I think it does because if you look at the requirements concerning the interrelatedness, even if there's some factual overlap, the legal issues are distinctive. The county defendants, the claims against them are federal claims based on civil rights actions. Ms. Stevens is a personal, is an independent person. She's a private citizen. So the legal issues are different. The policy behind not wanting piecemeal appeals is because you're going to retread the same ground. We're not going to do that here. For the state defamation, that's not true. You're right as to the 1983 claims, those really are independent of Ms. Stevens, although there's some allegations on count two that she's involved in as part of the conspiracy to get the DA to not investigate. I guess my point is this. If you play it all out and you get through the trial, if you keep them together and you get through the trial, the appellate issues that are going to be presented, the legal issues that are going to be presented on behalf of the county defendants are going to be separate and distinct from those of Carol Stevens. And we've separated those out in the motions for summary judgment. Those are clear when you read those briefings. We have different angles because there's different types of defamation and there's different defenses to those defamations. Yes, the fact, it was one scenario, but that doesn't mean it has to be kept together for purposes of whether this appeal should go forward or not. And the same applies for the... Sorry. Is there a practical reason why you don't want to wait? I mean, other than the fact that you're here. I mean... Well, I think in all honesty, because there are only state law claims, if we can get rid of, if in fact this case were to go forward, you would exercise appellate jurisdiction and affirm the motion for summary judgment order, granting it. All that's left are state law claims. I don't believe Judge Thrash is going to try state law claims in federal court. That's all that's left with Carol Stevens. That's all he has now and he hasn't... I mean, he could exercise his supplemental... He could exercise his discretion to not to send this case back right now. He could. He could. I think he's waiting on this court to see what happens. I don't know. I've not talked to the gentleman, of course, but that's what I'm saying. There's no indication of that on the record. In other words, in his rule for 54 order, he doesn't say... Correct. Hey, I'm keeping this thing waiting for you to decide whether the federal claims are going to be there, right? That's correct. You're just speculating on that. I am. Yes, sir. The other thing that I think is important, the reason why we want to move forward is it gets rid of all of our claims. It is, in fact, a final disposition of the claims against these three men. Solis and Conway don't even work for the county anymore. And, you know, the kinds of allegations that were made about abuse of power and corruption, those are career-destroying types of allegations. And for that to be sitting out there, when we now know, after 10 depositions and thousands of pages of documents, they're not true. The district court has determined that those allegations aren't true. I don't know what the particular hardship or unjustness, though, is in delay. I'm sorry, say that again. I don't know what the particular hardship or injustice of a delay in just waiting until there's a final judgment. What is it about this that is, you know, particularly a hardship to the defendants to wait until there's a final judgment? Well, I think the particular hardship is that you've got the allegations that there was a problem within the department and that there was a problem that included a current county administrator. There's this sort of this cloud of, well, distrust. You have orders dismissing. I mean, it's not as if the district court orders go away. You have their orders. You're in the same position you are right now, which is that those claims don't exist. You don't have to litigate them. All you have to do is just sit and wait to see what happens with the final pending claim for defamation, right? Right, but they're pending. They're still out there. There's no finality. That's always true. That's always true when some claims are dismissed and others remain pending. What is it that's different about this that's some particular hardship or injustice? Well, I think from a policy standpoint, I think it's important to think about judicial economy. I think certainly given that... Well, judicial economy works against you. Judicial economy would counsel in favor of one appeal. Well, I think that would be the case if the claims were the same. If they were, in fact, the same types of arguments that would be made on appeal. Again, if you go back and look at... We don't want to hear the same appeal twice. Right, and you wouldn't because what you're going to... We're here on one appeal. There are still claims pending in the district court that we could hear on a second appeal. That have nothing to do with these defendants. And these defendants... And I'll point out, there's a United States Supreme Court case that talks in addressing a jurisdictional issue that says that there has to be some consideration given to practicalities. And litigants should not be compelled to jump through judicial hoops merely for the sake of hyper-technical jurisdictional purity. And our position is just this. That's true. What that's directed at is in getting a final order at the end of the case, if there's some technical defect, we generally overlook it or find a way around it, it seems. But that's not true of a case where there are claims or defendants that are still pending. That's not what that case is directed at. Well, but I think what would happen in this case if you didn't exercise jurisdiction, then these county defendants are going to go back to the district court... Where they already are. And ask for an amended summary judgment order and amended judgment to lay out some additional reasons. And it's already preordained. That's exactly what... We're going to just be back where we are now. The only difference being, we've got a couple more pleadings in the record. These defendants' position is that the case against against Carol Stevens is a completely separate, different kind of case. It ultimately led to the involvement of these folks further down the road. All the evidence and all the allegations of conspiracy, there hasn't been any proof of that at all. There's no facts, only inferences that are unreasonable based on the actual direct evidence testimony. And for that reason, now I took all my time on the jurisdictional issue, but I think our briefs cover the other matters. And thank you for your time. Thank you. Ms. Gaker, you have one minute. May it please the court. My name is Leslie Gaker, and I am the attorney for the intervener, Tony Thomas, whose issue with the subpoena has come up. I will just make a couple notes for the court. One, in the briefing, plaintiff's counsel likes to talk about how it's just the identity of the source. The subpoena itself was very sweeping. I need your source. I need your investigation. I need to know all the communications you had with all of these folks. There was never any effort to modify or take that down. The district court properly found... Do you argue overbreadth in addition to the reporter's privilege? Honestly, I am not sure. I don't believe that we did because it was related. So I don't believe we argued overbreadth, just the scope of the subpoena and the reporter's privilege. Did Mr. Thomas... It's Mr. Thomas, right? Correct. Did Mr. Thomas deny it? Is it in the record that Mr. Thomas denied at any point that there was a source or a tip? It is not. Mr. Thomas has not spoken to the fact or the identity of a source. Is there any indication anywhere else, other than the one email that's referenced about a leak at the department, that it was a tip or a source for the story? I don't believe... The story itself, it is clear that he made an Open Records Act request and got the file. Right. I do not believe the story itself, which would kind of be the only thing in the record, says it was a tip. In other words, sometimes a story says... Right. We have a confidential source that tells us X and Y happened. Right. I do not believe that that is in the story. Have we ever, that you could tell, applied the reporter's privilege either to reject or deny, or to affirm or deny the quashing of a subpoena, where there wasn't even an indication up front that there was a source or a tip for the information? Well, the reporter's privilege goes beyond just sources... It does. ...and to other information, but I am not aware of an instance in where... Like, I'll give you an example, a case I'm very familiar with, as is the Chief Judge, in Price versus Time, which they both cite. There, the story said, I've spoken with three confidential sources who have confirmed for me that this salacious thing happened. And so there, they wanted to reveal the nature of the confidential source. If there's no indication, at least to some evidentiary threshold, that there is a confidential source or tip, do we even go through the exercise of then applying this constitutional test? Honestly, I don't know that we do, but I can't say... I mean, there's nothing in the evidence, but I can't say that we're not denying that there's a source. I understand. But as an evidentiary basis, I don't believe there's anything that would refer to a source, and I don't know of a case off the top of my head. I'm way over my time. Okay, Ms. Hawton, you've saved four minutes. Your Honor, I'll start, actually, with Ms. Gaither's argument. There is a source, and it is confirmed in the evidence. He says, when he sends the open records request to the officer at the Sheriff's office, and I'm going to try to quote as closely as I can, I'm told, so he says, though he uses the words, I'm told that I need to request Chase Peden's personnel file for something relating to his termination. So he knows that Chase Peden has been terminated at that point. Let me ask you this. Is it defamatory under Georgia law to tell someone that there is a letter in the file that you should look at? Is that a defamatory statement? If that person knows that letter is false, Your Honor, yes. The truth of a letter being in a file is a false statement or a defamatory statement? Your Honor, we don't know what the source said. I'm asking you to assume. Yeah, so my answer would still stand, Your Honor. How about picking up the phone and calling someone and saying, you should look in this file? Click. If that person was the initial defamer to begin with. Whoever, I'm asking. Then yes, I'd say that that's just perpetrating the defamation. If it was a third party? Probably not, if it was an uninterested third party, Your Honor. I do want to say one thing, though, that's very, very important that we have just learned in the last few weeks that may apply to this issue extremely carefully. Tony Thomas, as of today, is leaving WSB and going in-house at the FBI, and he will no longer be a reporter. So as of Monday, the reporter's privilege won't apply to him. I'm not sure that the law stands for that, but okay. Well, to the extent that the philosophy behind the reporter's privilege is that reporters need to be free to gather news, to talk to sources, to not have all those sources revealed. That, as to him, ends today. So I just want, I want to put that out there and make that aware. Whether he was a reporter at the time that he published it. Well, if the philosophy, though, is to promote news gathering activities and to continue to do so, then it is relevant, Your Honor. I have a question. Have you deposed Mrs. Stevens and asked her if she's the source? I believe we did, Your Honor. I'm not, I don't, I'm not 100% sure that that question was asked in that direct way to her, but. That's a pretty important question, because if we're looking at what bushes you have to shake, that would be the main bush I'd shake. And, Your Honor, I believe that she was. That's, and that's my good faith answer right now. I just don't remember. There are other people in the department you could depose, right? And we did. Including, well, but everybody in the chain of command below Solis and Conway? No, Your Honor. But then again, we only get 10 depositions in federal court, so. What is the, so as I understand it, there's a list of people who signed off on the, on the firing, on the termination? Correct. You have not deposed all of those people on that list, right? No, Your Honor, we have not. And those are people who would have had access to the file? Presumably, they would have at least had access to the investigative report. Right. You can seek leave to exceed the maximum number of 10, can't you? And, Your Honor, I believe that we did, or at least we raised that issue, and it did not look like the district court was amenable to that. I see where you've said in any briefing to us that you've, that you've unsuccessfully sought that leave. No, Your Honor, we did, we did not file a motion to that effect. The other point I want to make before my time is up is that the district court, to the county defendant's point, did not find untruth in the plaintiff's claims. They just simply did not consider them. The district court did not consider the plaintiff's statement of facts at all. It was as if our complaint had to be frozen in time, our claims had to be frozen in time as of the date that we filed the complaint, and they get a summary judgment basis, we get a motion for judgment on the pleadings. Thank you, Ms. Horton. Thank you. We are in recess for this week.